IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ESTATE OF JOHN PAUL MUMMERT,
deceased,

    Plaintiff,

v.                                                         Case No. 2:23-cv-2700-MSN-cgc
                                                          JURY DEMAND

ERIN E. CASSINELLI,

    Defendant.

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Before the Court is Defendant's Motion to Dismiss First Amended Complaint (ECF No. 25, "Second Motion"). Defendant's Second Motion incorporates by reference its previously filed Motion to Dismiss (ECF No. 15, "First Motion"),[1] supporting memorandum of law (ECF No. 15-1), and reply in support of the First Motion (ECF No. 21). (*See* ECF No. 25 at PageID 310.) Plaintiff responded in opposition (ECF No. 27), and Defendant filed a reply in support of its Second Motion (ECF No. 28). For the reasons set forth below, the Second Motion is **GRANTED**.

**BACKGROUND**

John Paul Mummert, a resident and citizen of Shelby County, Tennessee, died on July 30, 2018. (ECF No. 23 at PageID 183–84.) Mr. Mummert's Last Will and Testament ("Will") nominated his attorney, Leigh M. Chiles, who drafted the Will, to serve as his Executor without

---

[1] The Court denied Defendant's First Motion as moot after Plaintiff filed its First Amended Complaint. (*See* ECF No. 26.)

the requirements of bond, inventory, or an accounting. (*Id.* at PageID 184; ECF No. 23-2 at PageID 202.) On September 14, 2018, the Shelby County Probate Court appointed Ms. Chiles to serve, without bond, as the Personal Representative of the Estate of John Paul Mummert ("Estate" or "Plaintiff"). (ECF No. 23 at PageID 185.) Ms. Chiles was removed as Personal Representative of the Estate a little over a year after being appointed. (*Id.* at PageID 186.)

While serving as Executor, Ms. Chiles allegedly withdrew money from the Estate's accounts, including an account at Commercial Bank & Trust Company ("Commercial Bank"), and then used that money to pay personal expenses. (*Id.* at PageID 185.) This alleged conduct resulted in Ms. Chiles being indicted on four counts of wire fraud in violation of 18 U.S.C. § 1343 in July 2022. (*Id.* at PageID 186; *see* Case No. 2:22-cr-20177-JTF, ECF No. 1 (sealed) & ECF No. 2 (penalty copy).) Two attorneys represented Ms. Chiles in the criminal matter for those wire fraud charges—Michael Scholl and Defendant Erin E. Cassinelli, who was admitted *pro hac vice* in the matter and allegedly served as the escrow agent. (ECF No. 23 at PageID 186; Case No. 2:22-cr-20177-JTF, ECF Nos. 25 & 26.)

On March 17, 2023, Ms. Chiles pled guilty to a single count of wire fraud pursuant to a plea agreement. (ECF No. 23 at PageID 187.) As set forth in the plea agreement, Ms. Chiles agreed to plead guilty to Count 2 of the Indictment and "pay restitution to the Estate of John Paul Mummert and to any other identifiable Victims who suffered losses as a result of the criminal conduct which is the subject of this Plea agreement in an amount not to exceed $124,190.57." (ECF No. 23-10 at PageID 280; Case No. 2:22-cr-20177-JTF, ECF No. 42 at PageID 59.) The United States agreed to dismiss Counts 1, 3, and 4 of the Indictment at sentencing. (ECF No. 23-10 at PageID 281; Case No. 2:22-cr-20177-JTF, ECF No. 42 at PageID 60.) The parties also agreed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that, for purposes of calculating

Ms. Chiles' guideline sentencing range, the amount of the loss was at least $95,000 but not more than $124,190.57. (ECF No. 23-10 at PageID 281; Case No. 2:22-cr-20177-JTF, ECF No. 42 at PageID 60.)

At Ms. Chiles' change of plea hearing, Mr. Scholl appeared on behalf of Ms. Chiles; Ms. Cassinelli was not present. The following exchange occurred after Assistant U.S. Attorney Carroll André summarized the terms of the plea agreement:

> **MR. ANDRÉ:** She's agreeing to pay restitution to the Estate of John Paul Mummert and to any other identifiable victims who suffered losses as a result of the criminal conduct which is the subject of this plea agreement in an amount not to exceed $124,190.57.
>
> And I would add it's my understanding that that restitution is in Ms. Cassinelli -- that's the other attorney that's representing her in Arkansas. It's in her escrow account.
>
> **MR. SCHOLL:** That is correct, Your Honor. And a check is being sent to me made out to that estate. I will get together with the representative of the estate where we will be tendering that payment in full.
>
> **THE COURT:** The full amount?
>
> **MR. SCHOLL:** Yes, Your Honor.

(ECF No. 23 at PageID 187; Case No. 2:22-cr-20177-JTF, ECF No. 45 at PageID 93–94.) At the conclusion of the change of plea hearing, sentencing for Ms. Chiles was set before Judge Fowlkes for July 18, 2023, and she was released on her previous bond. (ECF No. 23 at PageID 188; Case No. 2:22-cr-20177-JTF, ECF No. 45 at PageID 100, ECF Nos. 39, 40, and 43.)

At approximately 12:10 a.m. on March 18, 2023, less than 13 hours after pleading guilty, Ms. Chiles committed suicide. (ECF No. 23 at PageID 188; ECF No. 23-11.)

A little over two weeks later, on April 4, 2023, counsel for the Estate sent a letter to Mr. Scholl and Ms. Cassinelli, explaining that he did not believe Ms. Chiles' death affected Ms. Cassinelli's obligation, as escrow agent, to disburse the restitution funds that she was holding to

3

the Estate. (ECF No. 23 at PageID 188; ECF No. 23-12.) Counsel stated that he was not intending to pressure Ms. Cassinelli to do anything immediately, but he wanted to provide her a contact for the Estate whenever she was prepared to disburse the restitution payment. (ECF No. 23 at PageID 188; ECF No. 23-12.)

Ms. Cassinelli responded via a letter that same day. (ECF No. 23 at PageID 189–89; ECF No. 23-13.) Ms. Cassinelli's letter stated that she disagreed with counsel for the Estate's contentions and that she was not in possession of any money due to the Estate. (ECF No. 23 at PageID 188–89; ECF No. 23-13.) Ms. Cassinelli's letter explained that the money she previously held in trust for the potential payment of the restitution did not belong to Ms. Chiles, and that after Ms. Chiles' death, Ms. Cassinelli had returned the funds to the third-party to whom the money belonged when that party requested its return. (ECF No. 23-13.) Plaintiff believes that the third-party Ms. Cassinelli referenced in her letter is Ms. Chiles' mother. (ECF No. 23 at PageID 187.)

Plaintiff's Amended Complaint asserts two counts against Defendant Erin E. Cassinelli: Breach of Escrow Agreement and Escrow Agent's Duties (Count 1) and Breach of the Implied Duty of Good Faith and Fair Dealing (Count 2). (*See* ECF No. 23 at PageID 189–90.)

4

## JURISDICTION[2] & CHOICE OF LAW

The Court has diversity jurisdiction under 28 U.S.C. § 1332. Federal district courts have original jurisdiction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).

For purposes of diversity jurisdiction, a person is a citizen of the state in which she is domiciled. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989); *Smith v. Queener*, 2018 WL 3344176, at *2 (6th Cir. Jan. 4, 2018). "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." *Texas v. Florida*, 306 U.S. 398, 424 (1939) (collecting cases). A legal representative of the estate of a decedent is deemed to be a citizen of the same state as the decedent. *See* 28 U.S.C. § 1332(c)(2).

The parties here are diverse. John Paul Mummert was a citizen of Tennessee. (ECF No. 23 at PageID 183.) Erin E. Cassinelli is a citizen of Arkansas. (ECF No. 23 at PageID 182.)

---

[2] Both the Complaint and First Amended Complaint name the Estate of John Paul Mummert as a party in this matter and not the co-personal representatives of the Estate. (*See* ECF No. 23 at PageID 180–81.) This is an odd choice—an estate is generally not a legal entity that can sue or be sued. *See McLean v. Chanabery*, 5 Tenn. App. 276 (1926); *Goss v. Hutchins*, 751 S.W.2d 821, 824 (Tenn. 1988); *Est. of Hordeski v. First Fed. Sav. & Loan Ass'n of Russell Cnty., Ala.*, 827 S.W.2d 302, 303 n.1 (Tenn. Ct. App. 1991); *see also In re Marriage of Schauberger*, 624 N.E.2d 863, 866 (Ill. App. 1993) (applying Illinois law); *Aguirre v. City of San Antonio*, 995 F.3d 395, 423 (5th Cir. 2021) (Texas law); *Raymond Loubier Irrevocable Tr. v. Loubier*, 765 F. App'x 560, 561 (2d Cir. 2019) (Florida law); *Frank v. Wells Fargo Bank, N.A.*, 620 F. Supp. 3d 1024, 1027 (C.D. Cal. 2022) (California law). Defendant, however, didn't raise the Estate's lack of capacity in its Motion, and the lack of capacity doesn't affect the Court's jurisdiction. *See Soto v. City of Memphis*, No. 2:17-CV-2323-CGC, 2017 WL 4543790, at *2 (W.D. Tenn. Oct. 11, 2017); *Srock v. United States*, No. 04-CV-72788-DT, 2006 WL 2460769, at *4 (E.D. Mich. Aug. 23, 2006). Because Defendant didn't raise the Estate's lack of capacity in its First or Second Motion, it may have waived or forfeited any defense based on lack of capacity, *see DXE Corp. Liquidating Tr. v. L3 Commc'ns Corp.*, No. 3:12-CV-98, 2014 WL 3945892, at *8 (S.D. Ohio Aug. 12, 2014), but the Court need not address that issue.

State substantive law applies to state law claims brought in federal court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Federal courts sitting in diversity apply the choice-of-law rules of the forum state.  *See, e.g., State Farm Mutual Auto. Ins. Co. v. Norcold, Inc.,* 849 F.3d 328, 331 (6th Cir. 2017); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  For contract disputes, Tennessee follows the rule of *lex loca constractus*, meaning that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent. *Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 632 (Tenn. Ct. App. 2017) (quoting *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474–75 (Tenn. Ct. App. 2003)).  For tort claims, Tennessee uses the most significant relationship test set forth in the Restatement (Second) of Conflict of Laws, "which provides that the rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties under the principals stated in [Restatement (Second) of Conflict of Laws] § 6." *Blue Grass Stock Yards of Albany, LLC v. Phillips*, 688 F. Supp. 3d 626, 631 (M.D. Tenn. 2023) (cleaned up).

The parties do not discuss what state's substantive law applies to Plaintiff's claims.  Both parties, however, generally cite Tennessee substantive law with respect to Plaintiff's claims. Because there is no dispute about what state's law applies, the Court need not engage in a choice of law analysis *sua sponte*.  *See Iron Horse Energy Servs., Inc. v. S. Concrete Prods., Inc.*, 443 F. Supp. 3d 952, 956 (W.D. Tenn. 2020) (citing *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998) and *Yearta v. Amusements of Am., Inc.*, No. 2:17-cv-02117-SHM-jay, 2020 WL 61054, at *3 (W.D. Tenn. Jan. 6, 2020)).

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts the plaintiff's "plausible factual allegations as true and draw[s] all reasonable inferences" in the plaintiff's favor. *Marchek v. United Servs. Auto. Ass'n*, 118 F.4th 830, 833 (6th Cir. 2024); *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020). Using this framework, the court determines whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A complaint need not contain detailed factual allegations; however, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "a plaintiff must allege facts that, when taken as true, state a claim to relief that is plausible on its face and that rises above the speculative level." *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024) (cleaned up). If a court decides, in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. *Iqbal*, 556 U.S. at 679.

## DISCUSSION

First, Plaintiff did not respond to Defendant's argument about Plaintiff's claim for breach of the implied duty of good faith and fair dealing. (ECF No. 18 at PageID 160.) Instead, Plaintiff conceded that this is not a standalone claim. (*Id.*) Therefore, Defendant's Second Motion is **GRANTED** as to Count 2 of Plaintiff's First Amended Complaint, Plaintiff's claim for a breach

7

of the implied duty of good faith and fair dealing. *See Fed. Nat'l Mortg. Ass'n v. River Houze, LLC*, 596 F. Supp. 3d 925, 932–33 (E.D. Mich. 2022). That leaves only Plaintiff's claim for "breach of escrow agreement and escrow agent's duties." (*See* ECF No. 23 at PageID 189.) For the reasons set forth below, the Court finds that Plaintiff has not alleged a plausible claim for relief.

To start, Plaintiff's allegations about the alleged escrow agreement are insufficient to state a claim.[3] Plaintiff alleges that the third-party who provided the restitution funds was no longer the owner of the funds; however, there are no facts pled to support that conclusion. Plaintiff then asserts that Ms. Cassinelli, "as the escrow agent, lacked the authority to release any funds in violation of the terms of the escrow agreement and her obligations as the escrow agent with respect to the funds being held for the benefit of the Estate and the Estate's beneficiaries." (ECF No. 23 at PageID 9.) But that assertion doesn't add any supporting factual allegations, and therein lies the rub. Plaintiff doesn't identify any escrow agreement term that Ms. Cassinelli violated or failed to act in accordance with, nor does it specify how Ms. Cassinelli violated her fiduciary duties. Counsel's statements to the Court are not part of the plea agreement, and the plea agreement, which Plaintiff says functioned as the escrow agreement, does not identify an escrow agent or "holder" for the restitution funds, nor does it include any terms as to the disbursement of any funds held in escrow. Plaintiff didn't have to include "detailed factual allegations," but it had to provide "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. Plaintiff's First Amended Complaint doesn't meet that standard.

---

[3] What may not be clear from the First Amended Complaint, but is acknowledged in Plaintiff's response, is that there was no separate "express written escrow agreement"; instead, Plaintiff asserts that "the Plea Agreement functioned as the escrow agreement." (ECF No. 27 at PageID 320.)

Plaintiff's claim also falters because it's based on the premise that Plaintiff had an enforceable right to the restitution amount set forth in the plea agreement. Plaintiff had no such right. As an initial matter, "restitution is a part of one's sentence." *United States v. Winans*, 748 F.3d 268, 271 (6th Cir. 2014) (citing *United States v. Curry*, No. 13–1061, 547 Fed.Appx. 768, 2013 WL 6501167 (6th Cir. Dec. 11, 2013)); see *United States v. O'Hara*, 114 F.4th 557, 560 (6th Cir. 2024). District courts don't have "inherent authority to order restitution, and may do so only as explicitly empowered by statute." *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003). Both the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663 ("VWPA") and the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A, provide district courts with statutory authority to order restitution in certain circumstances. *Id.* But both specify that the district court may exercise its authority to order restitution "*when sentencing a defendant.*" 18 U.S.C. § 3663(a)(1) and 18 U.S.C. § 3663A(a)(1). Ms. Chiles was never sentenced, and no order of restitution was ever entered. Absent those prerequisites, there is no enforceable restitution obligation.

Even if there was an enforceable restitution obligation, Plaintiff's claim in substance seeks enforcement of that obligation against someone other than Ms. Chiles or her estate. Plaintiff does not dispute that the funds held by Ms. Cassinelli came from someone other than Ms. Chiles but alleges that "the funds ceased to be the property of the payor" upon deposit into Ms. Cassinelli's client trust account. Yet the third-party providing the funds was not a party to the plea agreement, and Plaintiff makes no factual allegations to support its conclusion that the third-party relinquished ownership of the funds upon transfer. Plaintiff has not cited, and this Court has not found, any authority that would allow Plaintiff to enforce the asserted restitution obligation against anyone other than Ms. Chiles or her estate. *See United States v. McClanahan*, 475 F. Supp. 3d 525, 532

9

(S.D.W. Va. 2020) (holding that the defendant's restitution obligations were not enforceable against the defendant's non-probate assets that were paid to her husband on her death).

Finally, whatever the parties' obligations in the plea agreement were, those obligations terminated on Ms. Chiles' death. That's because, under the abatement doctrine, when a defendant dies prior to the entry of judgment or while her direct appeal is pending, the defendant's charges abate *ab initio*. *See United States v. Wilcox*, 783 F.2d 44, 44 (6th Cir. 1986).[4] Abatement *ab initio* is not a mere dismissal of the charges. *Bamonte v. Charatan*, No. 22-CV-795 (KMK), 2023 WL 2751894, at *5 (S.D.N.Y. Mar. 31, 2023). "Instead, everything associated with the case is extinguished, *leaving the defendant as if he had never been indicted or convicted*." *Id.* (citing *United States v. Libous*, 858 F.3d 64, 66 (2d Cir. 2017)). Plaintiff's claim as a third-party beneficiary[5] of the plea agreement therefore fails because the underlying agreement is void and

---

[4] Had an order of restitution been entered in Ms. Chiles' criminal case, it's unclear whether the order of restitution would also have been abated on her death. In *United States v. Johnson*, the Sixth Circuit recognized that "[d]eath pending direct appellate review of a criminal conviction abates the appeal, the conviction, and any fine accompanying such conviction." *United States v. Johnson*, 937 F.2d 609 (Table), 1991 WL 131892, at *1 (6th Cir. 1991). Yet the Sixth Circuit specifically ordered in *Johnson* that "[t]o the extent that the deceased appellant has been ordered to make restitution as a consequence of his conviction, such restitution is not affected hereby." *Id.* Of course, *Johnson* is an unpublished decision and predates the Supreme Court's decision in *Nelson v. Colorado*, 581 U.S. 128 (2017). Since *Nelson*, every Circuit Courts of Appeals to address the question has found that abating a conviction also requires vacating any restitution imposed pursuant to the conviction. *See, e.g.*, *United States v. Reynolds*, 98 F.4th 62, 72 (1st Cir. 2024) (collecting cases). But because no order of restitution was entered here, the Court need not speculate upon it.

[5] It's also questionable whether Plaintiff, as a third-party beneficiary, could enforce an obligation set forth in the plea agreement. Both parties recognize that "a plea agreement is 'essentially' a contract between the defendant and the government." *United States v. Estrada-Gonzalez*, 32 F.4th 607, 611 (6th Cir. 2022). That is not, however, a brightline rule in all respects, and federal courts do not treat "plea agreements as purely state-law creatures subject solely to state-law contract rules." *Id.*; *see United States v. Ritchison*, 887 F.3d 365, 369 (8th Cir. 2018) ("We also recognize, however, that plea agreements are not contracts, and therefore contract doctrines do not always apply to them." (cleaned up)). Relevant here, courts have rarely applied the contract rule of third-party beneficiary enforcement to plea agreements. *See United States v. Mariamma VIJU (01)*, No. 3:15-CR-0240-B, 2016 WL 107841, at *2, *4 (N.D. Tex. Jan. 11, 2016)

10

has no legal effect between the parties to the agreement. *See United States v. Bascue*, No. CR 92-169-FR, 1993 WL 513246, at *9 (D. Or. Dec. 9, 1993) (finding that "[t]here is no basis for this Court to enforce the rights of a third-party beneficiary to a plea agreement which has no further legal effect as between the parties to the plea agreement.").

For all these reasons, Plaintiff has failed to allege a plausible claim for "breach of escrow agreement and escrow agent's duties." Defendant's Second Motion is **GRANTED** as to Count 1 of Plaintiff's First Amended Complaint.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss First Amended Complaint (ECF No. 25) is **GRANTED**. All claims in this matter are **DISMISSED** with prejudice.

**IT IS SO ORDERED**, this 9th day of January, 2025.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

(noting that "[s]ome courts have expressed doubt that a third party has standing to enforce a plea agreement" and collecting cases; then concluding that "third-party beneficiaries have no contractual right to enforce plea agreements" because doing so "would not further the right's purpose of ensuring fair plea bargaining"); *Wright v. U. PO*, No. 10-CV-5127 (MKB), 2021 WL 2779451, at *19 (E.D.N.Y. July 2, 2021) (third-party could not enforce plea agreement because the plea agreement was not entered for third-party's benefit); *but see State v. Frazier*, 697 So. 2d 944, 945 (Fla. Dist. Ct. App. 1997).

11